UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| NANCY MCCOY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>NESTLÉ USA, INC.,<br><br>　　　　　　　　Defendant | 3:23-cv-02218<br><br><br><br><br><br>Class Action Complaint<br><br><br>Jury Trial Demanded |

　　Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

　　1.　Nestlé USA, Inc. ("Defendant") labels and sells sparkling mineral water purporting to contain lime ingredients under the Perrier brand ("Product").

　　2.　In the last five years, annual sparkling water sales in America have increased over 40 percent to 170 million gallons.[1]

　　3.　This is because many Americans have cut back on carbonated soft drinks ("CSD") and fruit juices, due to awareness of sugar's adverse health effects.[2]

　　4.　Sparkling water with small amounts of added fruit is often preferable to regular water because it lacks the excess sugar and calories in soda and juice.

---

[1] Sheila Marikar, The Seltzer Bubble, New York Times, July 13, 2019.
[2] Rebekah Schouten, Why is sparkling water so big right now?, Food Business News, Mar. 10, 2021; Margaret Malochleb, Riding the Wave of Flavored Waters, IFT.org, Sept. 1, 2019; Barbara Harfmann, Bottled Water Bubbles Over with Growth, Beverage Industry, Oct. 8, 2019.

5. The consumption of limes has increased several hundred percent since 1990, as consumers increasingly seek beverages containing this citrus fruit.

6. Limes are valued for their nutritive benefits and taste.

7. Limes are high in antioxidant vitamin C, which protects cells from free radicals and polyphenols, linked with reducing hypertension.

8. Limes have a characteristic sour and tart taste with woody and piney notes, from aldehydes, esters, ethers, terpenes, and ketones.

## I. TYPES OF DECEPTION

9. Federal and identical state regulations prohibit false and deceptive packaging and labeling of food and beverages. 21 U.S.C. § 343(a).

10. Misleading containers that are "made, formed, or filled as to be misleading" are prohibited under federal and identical state food labeling regulations. 21 U.S.C. § 343(d).

11. While this provision is often applied to "slack-fill" – the empty space within a product that gives consumers the impression they are receiving more than they are – its application is not limited to slack-fill.

12. These include packaging made to give a purchaser a false impression as to the quantity, quality, size, kind, or origin of the food.

13. Examples include (1) bottles made of thickened glass for olives, cherries, and strawberries, magnifying the size of the individual fruits, (2) wrapping fruits like

limes and oranges in green and orange cellophane so it appears higher quality and more ripe and (3) false bottoms within boxes to give the impression it was more full.³

14. Other examples include cellophane "windows" showing the part of the product with more valued ingredients and placing higher-grade components above lower-grade ones so consumers think they will receive more of the former.

15. An (in)famous example of misleading packaging was highlighted in a 1933 traveling exhibit by the FDA to bring public attention to the numerous ways food packaging was misleading and harmful to consumers.

16. This involved "egg noodles" wrapped in yellow cellophane so consumers believed it was made with significant amounts of higher value eggs.



- Labeled "Plain Noodles" But Contain Enough Egg To

---

³ John C. Martin, "Section 403 (d)-Containers So Made, Formed or Filled as to Be Misleading." Food, Drug, Cosmetic Law Journal 8.10 (1953): 663-672.

>     Make Them Look Like Egg Noodles (Left)
> - These Are Plain Noodles Honestly Packaged (Center)
> - Labeled "Plain Noodles" But Yellow Wrapper Makes Them Look Like Egg Noodles (Right)[4]

## II. CONSUMERS EXPECTED MORE LIME

17. Consumers will expect an appreciable amount of lime because the label contains the two wedges of fresh lime and the word "lime," in a green-tinted bottle, which makes the contents appear greener than it otherwise would be.

 

18. The statement, "Water Captured at the Source in France," assures purchasers they are buying a product of the highest quality.

---

[4] Pictures from this era were not able to capture the color of the wrapper due to technology and preservation issues.

4

19. Despite the green-tinted bottle and picture of limes, the amount of lime is de minimis or negligible.

20. Only purchasers who rotate the bottle will see its attempt to disclaim any lime ingredients through the statement, "Flavored Carbonated Mineral Water."

 

21. By using the word "Flavored," consumers will know the Product has a lime taste, but not if it contains an appreciable amount of lime, or enough to independently provide its taste.

22. That the Product does not contain an appreciable amount of lime is confirmed by the small ingredient list on the bottom of the back of the bottle, identifying "MINERAL WATER, CARBON DIOXIDE [and] NATURAL FLAVORS."




23. According to flavor expert Robert Holmes, if the Product provided "all the flavor depth" and nutritive attributes of limes, the ingredients would list "lime juice" instead of "Natural Flavors."

24. "Natural Flavors" consists of flavor compounds which imitate the taste of limes, and are lower cost than limes.

25. As lime juice is not a separately identified ingredient, any real lime does not exceed trace or de minimis levels as part of the natural flavors.

26. In contrast to extractives, oils, and essences from limes, which are concentrated, compounded, and synthesized in a laboratory and considered "flavor," ingredients like lime juice has nutritive value and is considered food. *See* 21 C.F.R. § 101.22(a)(3).

27. Consumers prefer beverages which get their lime taste from limes instead of "natural flavors" because the former is natural and less processed, not

6

made with additives or solvents.

28. The visible part of the front label is required to disclose the source of the lime taste through the statement, "natural lime flavored with other natural flavors." 21 C.F.R. § 101.22(i)(1)(i).

29. However, lab analysis reveals or would reveal a relative abundance of limonene and citral, compared to the other key odor-active compounds in limes, which indicates a de minimis amount of lime.

30. The relative absence of the complementary lime flavor compounds causes the Product to lack an authentic lime taste.

31. The cost of using more lime would be several cents per bottle based on spot markets for lime.

32. The Product is unable to confer any of these health-related benefits because it has less lime ingredients than it purports to.

33. Sparkling waters with lime are available to consumers from companies like Spindrift, which compete with Perrier Lime.

 

34. Given that the Product is sold under the esteemed *Perrier* brand, and imported from France, Plaintiff had no reason to expect the Product lacked an appreciable amount of lime.

## Jurisdiction and Venue

35. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

36. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

37. Plaintiff is a citizen of Florida.

38. Defendant is a citizen of Delaware and Virginia.

39. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

8

40. The members of the classes Plaintiff seek to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across the States covered by the proposed classes.

41. Venue is in this District with assignment to the Pensacola Division because the Plaintiff resides in Escambia County, and a substantial part of the events or omissions giving rise to these claims occurred in Escambia County, including Plaintiff's purchase and use of the Product, reliance on the representations, and/or subsequent awareness they were false and misleading.

## Parties

42. Plaintiff Nancy McCoy is a citizen of Pensacola, Escambia County, Florida.

43. Defendant Nestlé USA, Inc., is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County.

44. Perrier is a French brand of mineral water with its source at the naturally carbonated Vergèze spring in the Gard département.

45. This spring dates to the Roman era, where it provided sustenance and hydration to military forces such as Roman legions and the army of Hannibal.

46. Perrier is known as the Champagne of mineral water not just based on

its French origins but because of its high standards for purity.

47. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 501 N Navy Blvd, Pensacola, Florida 32507, between 2021 and 2023, among other times.

48. Plaintiff saw the green tinted bottle which made the contents appear greener and believed this was because the Product contained a greater amount of lime and/or read the word "lime" and saw the two lime wedges.

49. Plaintiff expected a non-de minimis amount of lime for its nutritive and taste attributes, which she failed to receive.

50. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $2.49 per 11.15 fl oz (330 mL), excluding tax and sales.

51. Plaintiff bought the Product at or exceeding the above-referenced price.

52. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

53. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

54. Plaintiff chose between this Product and others represented similarly, but

which did not misrepresent their attributes, requirements, instructions, features, and/or components.

55. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

56. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other sparkling water items promoting fruit ingredients because she is unsure whether those representations are truthful.

57. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other sparkling water items promoting fruit ingredients.

## Class Allegations

58. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, South Dakota, Kansas, Mississippi, Arkansas, Alaska, Wyoming and South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

59. Common questions of issues, law, and fact predominate and include

whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

61. Plaintiff is an adequate representative because her interests do not conflict with other members.

62. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA"), Fla. Stat. § 501.201, et seq.

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Plaintiff expected the Product contained a non-de minimis amount of lime, which she failed to receive.

68. Plaintiff would not have purchased the Product or paid as much if the

true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

69. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

70. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

71. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

72. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained a non-de minimis amount of lime.

73. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

74. Defendant knew the product attributes that potential customers like Plaintiff were seeking, including non-de minimis amount of fruit ingredients in

sparkling water, to make it a better alternative to sodas and fruit juices which contain high levels of sugar, and developed its marketing and labeling to directly meet their needs and desires.

75. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained a non-de minimis amount of lime.

76. Defendant's representations affirmed and promised that the Product contained a non-de minimis amount of lime.

77. Defendant described the Product so Plaintiff believed that it contained a non-de minimis amount of lime, which became part of the basis of the bargain that it would conform to its affirmations and promises.

78. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

79. This duty is based on Defendant's outsized role in this market for and custodian of the Perrier brand, known as the Champagne of sparkling water.

80. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

81. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

82. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

83. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

84. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-de minimis amount of lime.

85. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it contained a non-de minimis amount of lime, and she relied on its skill and judgment to select or furnish such suitable product.

Negligent Misrepresentation

86. Defendant had a duty to truthfully represent the Product, which it breached.

87. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Perrier brand, consistently rated as a luxury imported brand of

sparkling mineral water.

88. Defendant's representations regarding the Product went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and historic commitments to quality it has been known for.

89. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

90. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

91. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

## Fraud

92. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-de minimis amount of lime.

93. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception.

## Unjust Enrichment

94. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class

members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated:   January 29, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com