UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**NANCY MCCOY,** *individually and on behalf of all others similarly situated***,**

    **Plaintiff,**

v.                                              **CASE NO. 3:23cv02218-MCR-HTC**

**NESTLÉ USA, INC.,**

    **Defendant.**

_____/

## ORDER

Plaintiff Nancy McCoy brings this putative class action against Defendant Nestlé USA, Inc. ("Nestlé"), asserting that Nestlé's Perrier Lime carbonated mineral water is labeled in a manner misleading to consumers in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, and several common-law protections. Based on its labeling, McCoy alleges that she expected the water would contain an appreciable amount of lime juice, when in fact it contains "natural flavors." Nestlé has moved to dismiss McCoy's First Amended Class Action Complaint ("FAC") and McCoy has responded. ECF Nos. 21, 23-1. On consideration, the Court finds that the Motion is due to be granted.

I. **Background**[1]

Nestlé labels and sells sparkling mineral water under the Perrier brand called "Perrier Lime" (the "Product").

 

---

[1] Given the procedural posture in this case, the Court accepts as true the factual allegations in the FAC, drawing all inferences derived from those facts in the light most favorable to McCoy. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The facts are drawn from the FAC, ECF No. 16, and Exhibits A and B to the Declaration of Dale J. Giali in Support of Defendant's Motion to Dismiss, ECF No. 21-1. A court may consider evidence attached to a motion to dismiss if "(1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quotations and citations omitted). The Declaration Exhibits consist of photographs of the Product. McCoy included photographs of the Product in her FAC, the photographs are central to the claims, and they are undisputed.



McCoy alleges that she bought the Product believing it contained a "non-de minimis amount of lime" because she wished to benefit from lime's "nutritive and taste attributes, which she failed to receive." ECF No. 16 ¶ 54. She claims she was deceived because "the bottle [color] made the contents appear greener . . . and/or [the label included] the word 'lime' and . . . two lime wedges." *Id.* ¶ 53.

CASE NO. 3:23cv02218-MCR-HTC

Page 4 of 13

As depicted in the photographs of the Product above, the central front label reads: "SOURCE," "perrier," "LIME," and "Water Captured at the Source in France" and includes a picture of two lime wedges. The left-side front label reads "FLAVORED CARBONATED MINERAL WATER" and the right-side front label reads "0 CALORIES [/] SWEETENERS" and "0 CALORIES PER BOTTLE." The bottle is tinted green. The photographs of the Product below show that the back label states that the Product "CONTAINS NO JUICE" and that the ingredients are "MINERAL WATER, CARBON DIOXIDE, [and] NATURAL FLAVORS."




CASE NO. 3:23cv02218-MCR-HTC

McCoy alleges that consumers "expect an appreciable amount of lime because the label contains the two wedges of fresh lime and the word 'lime,' in a green-tinted bottle, which makes the contents appear greener than it otherwise would be." *Id.* ¶ 17. Thus, when McCoy "saw the bottle which made the contents appear greener" and "read the word 'lime' and saw the two lime wedges," she "believed this was because the Product contained a greater amount of lime" than it did. *Id.* ¶ 53.

But "[d]espite the green-tinted bottle and picture of limes, the amount of lime is de minimis or negligible." *Id.* ¶ 19. This is confirmed by the Nutrition Facts panel, which identifies the ingredients as "MINERAL WATER, CARBON DIOXIDE [and] NATURAL FLAVORS." *Id.* ¶ 27. "'Natural Flavors' consists of flavor compounds which imitate the taste of limes, and are lower cost than limes." *Id.* ¶ 29. These flavors lack the nutritive value of lime juice. *Id.* ¶ 31. Because the product does not include lime juice, it "lack[s] an authentic lime taste." *Id.* ¶ 35.

Although the left front label states the Product is Flavored Carbonated Mineral Water, McCoy alleges that consumers will not know "if it contains an appreciable amount of lime, or enough to independently provide its taste." *Id.* ¶ 21. Rather, they will only know that it "has a lime taste." *Id.* Additionally, given that it is sold under the "esteemed *Perrier* brand," *Id.* ¶ 39—"the Champagne of mineral water," *Id.*

Page 6 of 13

¶ 51—and is imported from France, McCoy "had no reason to expect the Product lacked an appreciable amount of lime," *Id.* ¶ 39.

Although the right front label states the Product contains no calories, McCoy alleges that this does not put consumers on notice regarding the absence of lime juice because lime juice, in small quantities, contains no calories. For example, four different brands of 100% (or near-100%) lime juice contain zero calories per 5 mL / 1 tsp. *Id.* ¶¶ 25-26. Thus, McCoy alleges, the calorie information on the Product's front label does not convey that the product lacks lime juice.

McCoy asserts that the value of the Product is "materially less than its value as represented." *Id.* ¶ 58. "Consumers prefer beverages which get their lime taste from limes instead of 'natural flavors' because the former is natural and less processed, not made with additives or solvents." *Id.* ¶ 32. Had McCoy known the representations on the Product were misleading, she would have paid less for the Product or not purchased it at all.

McCoy brings claims against Nestlé for (1) violation of the FDUTPA, (2) breach of express warranty and implied warranty of merchantability / fitness for a particular purpose, and (3) unjust enrichment. McCoy seeks both monetary damages and injunctive relief directing Nestlé to correct its allegedly violative labeling.

## II. Discussion

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. For purposes of a Rule 12(b)(6) motion, the Court accepts as true the factual allegations of the complaint and considers whether the facts alleged are sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is found where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*.

### A. The FDUTPA Claim

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A claim for damages under FDUTPA requires: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)). To show the existence of a deceptive act or unfair practice, a plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id*. at 983-84 (citation omitted). Florida employs an objective test

to determine whether a practice is "likely to deceive a consumer acting reasonably." *Id.* at 984. A plaintiff must show "'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000).

The Court rejects McCoy's argument that the Product is deceptive because "[p]urchasers of the Product expect an appreciable amount of lime because the label contains the two wedges of fresh lime and the word 'lime,' in a green-tinted bottle," but "the amount of lime is de minimis or negligible." ECF No. 16 ¶¶ 17, 19. McCoy has failed to plausibly allege that a consumer acting reasonably would conclude that the Product contains an appreciable amount of lime such that its labeling and packaging is misleading.

Courts have dismissed consumer protection suits where a product's label does not make claims about the ingredients constituting the product's flavor. *See Cummings v. Growers*, No. 1:22-CV-141-AW-HTC, 2023 WL 3487005 (N.D. Fla. May 15, 2023) (package of smoke-flavored almonds labeled "Smokehouse®" did not violate the FDUTPA where flavor came from liquid smoke rather than actual smoke because the term was a flavor indicator); *Angeles v. Nestlé USA, Inc.*, 632 F.

Supp. 3d 309, 316 (S.D.N.Y. 2022) ("[T]he label's use of the phrase 'Lemon & Lemon Zest' merely represents that the Product is lemon flavored."); *Oldrey v. Nestlé Waters N. Am., Inc.*, No. 21 CV 03885, 2022 WL 2971991, at *3 (S.D.N.Y. July 27, 2022) ("[T]he label's use of the phrase 'With a Twist of Raspberry Lime' merely represents that the Product is raspberry and lime flavored."); *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) ("[T]he word 'Strawberry,' combined with a picture of half of a strawberry and a Pop-Tart oozing red filling, [does not] mislead[] consumers into believing that the Product's filling consists of 'only strawberries and/or more strawberries than it does' have.").

Here, too, the label's use of the word "lime" and depiction of lime wedges represents only that the Product is lime flavored. The label does not state "made with lime" or use other language conveying that the Product includes lime or lime juice. *See Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 383 n.4 (S.D.N.Y. 2021) ("The absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor."). And the back label confirms that the Product CONTAINS NO JUICE. *See Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133 (S.D. Fla. 2021) ("The presence of true information or a disclaimer can rebut a claim of deception."); *Hi-Tech*

*Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) ("[c]onsidering the label as a whole and taking its statements in context" when assessing a false advertising claim).

McCoy also argues that that the green color of the bottle is misleading. But it is evident that the bottle, not the water, is colored, because the water does not fill the entire bottle, yet the entire bottle is the same shade of green. Additionally, the back label states that the Product does not contain an appreciable amount of lime. *See Piescik*, 576 F. Supp. 3d at 1133; *Hi-Tech Pharms., Inc.*, 910 F.3d at 1197.

The three cases McCoy cites in support are distinguishable. *Bardsley v. Nonni's Foods LLC*, No. 20 CIV. 2979, 2022 WL 814034 (S.D.N.Y. Mar. 16, 2022), relates to a biscotti label stating "Made with Real Sugar, Butter and Lemon Zest Oil" where the biscotti were flavored with "natural flavors" rather than lemon; *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94 (E.D.N.Y. 2020), relates to a beverage label reading "MADE WITH AGED VANILLA" where the product was flavored predominantly or exclusively from an artificial ingredient; and *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453 (S.D.N.Y. 2020), relates to blueberry bagels with artificial blueberry-like pieces that contained only trace amounts of real blueberries displayed under a sign reading "Food You Can Trust: We're advocates for clean food. We're committed to menu transparency. We're dedicated to having a positive

impact on the food system." The language "made with" and "clean food" both describe a product's ingredients, unlike the word "Lime" on the label of the Product, and these cases are therefore inapplicable to the labeling and packaging at issue in this case. *See Campbell*, 516 F. Supp. 3d at 383 n.4.

### B. The Common-Law Claims

McCoy's claims for breach of express warranty and implied warranty of merchantability / fitness for a particular purpose and unjust enrichment are based on the same theory as her FDUTPA claim and are therefore dismissed for the reasons stated above.

The breach of express and implied warranty claims are also dismissed because McCoy has failed to plead privity with Nestlé.[2] Under Florida law, both claims require privity. *See, e.g.*, *Inouye v. Adidas Am., Inc.*, No. 8:22-CV-416-VMC-TGW, 2023 WL 2351654, at *7 (M.D. Fla. Mar. 3, 2023) ("In Florida, warranty-based claims require privity of contract between the parties."). However, some courts applying Florida law have found that "a plaintiff who purchased a product from a third party may properly bring claims for a breach of warranty against the manufacturer if 'substantial direct contacts' existed between the plaintiff and the

---

[2] Notably, in her Corrected Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 23-1, McCoy does not argue that these claims should proceed.

CASE NO. 3:23cv02218-MCR-HTC

manufacturer." *Id.* (citing *Douse v. Boston Sci. Corp.*, 314 F. Supp. 3d 1251, 1262 (M.D. Fla. 2018)).  McCoy does not allege there were any direct contacts between her and Nestlé beyond the Product label.  Packaging alone is insufficient to create substantial direct contacts between the parties.  *See id.* at *7-8 ("[T]he weight of authority indicat[es] that [ ] labeling and advertising does not satisfy the 'substantial direct contacts' exception.") (collecting cases).

McCoy's unjust enrichment claim additionally fails because she has not plausibly alleged any FDUTPA or common law violation, so any enrichment was not unjust.  *See Piescik*, 576 F. Supp. 3d at 1135 ("[B]ecause Plaintiff has not adequately alleged any deceptive act, it follows that it is not unjust for Defendant to retain any benefit it purportedly received."); *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (affirming dismissal of FDUTPA and unjust enrichment claims because the plaintiff received the product he bargained for); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1357 (S.D. Fla. 2012) ("[I]f Plaintiff cannot prevail on her FDUTPA claim, she cannot prevail on her unjust enrichment claim" premised on the same conduct.).[3]

---

[3] The Court separately notes that McCoy lacks standing to seek injunctive relief because she is aware of the Product's lime content.  *See, e.g.*, *Cummings*, 2023 WL 3487005, at *2 (FDUTPA / consumer fraud plaintiff lacked standing to pursue injunctive relief); *Piescik*, 576 F.

### III. Leave to Amend

Although courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), courts need not do so where "amendment would be futile." *Piescik*, 576 F. Supp. 3d at 1135 (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)) (dismissing with prejudice complaint alleging violation of the FDUTPA, false and misleading advertising, and unjust enrichment); *see also Marrache*, 17 F.4th at 1102 (affirming dismissal with prejudice of complaint alleging violations of FDUTPA and unjust enrichment because doing so would be futile). The Court finds that in light of the Product's packaging and the reasoning above, amendment would be futile.

Accordingly, Defendant Nestlé USA, Inc.'s Motion to Dismiss, ECF No. 21, is **GRANTED with prejudice**. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** this 1st day of February 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

Supp. 3d at 1131 (same); *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 471 (S.D. Fla. 2018) (same); *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) (same).

The Court does not reach Nestlé's preemption arguments because McCoy's claims fail as a matter of law.

CASE NO. 3:23cv02218-MCR-HTC